UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANFORD HEALTH CARE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>HAWAII MEDICAL SERVICE ASSOCIATION,<br><br>　　　　　Defendant. | Case No. 21-cv-06720-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 22 |

Before the Court is Defendant Hawaii Medical Service Association's ("HMSA") motion to dismiss for lack of personal jurisdiction. Dkt. No. 22. For the reasons below, the Court grants HMSA's motion.[1]

## I.　BACKGROUND

For purposes of this motion, the Court accepts the following allegations as true:

Plaintiff Stanford Health Care ("Stanford Hospital") is a California non-profit with its principal place of business in Santa Clara County, California. Defendant Hawaii Medical Service Association ("HMSA") is a Hawaiian insurance company with its principal place of business in Honolulu, Hawaii.

Under a written contract between Stanford Hospital and Anthem Blue Cross of California (the "Stanford/Blue Cross Contract"), Stanford Hospital agrees to provide medical services to Anthem Blue Cross plan members at negotiated rates. Dkt. No. 1 ¶ 14. As an out-of-state affiliate of Anthem Blue Cross, HMSA has an agreement with Anthem Blue Cross that allows its plan members to also access Stanford Hospital's medical care at the negotiated rates.

---

[1] The Court finds the matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b).

Between August 2016 and January 2020, Stanford Hospital provided medical care under the Stanford/Blue Cross Contract to eight patients with HMSA insurance. The "usual and customary bill" for the services that Stanford Hospital provided under the Stanford/Blue Cross Contract was $2,329,184.40. However, HMSA paid only $355,674.46 and refused to pay the balance after Stanford Hospital requested it.

On August 30, 2021, Stanford Hospital sued HMSA in this Court. *Id.* It brings claims for breach of implied contract and quantum meruit. HMSA now moves to dismiss Stanford Hospital's complaint for lack of personal jurisdiction or, in the alternative, for failure to state a claim, and to strike allegations from the complaint as time-barred.

## II. LEGAL STANDARD

When a defendant objects to the Court's exercise of personal jurisdiction over it under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing that jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Absent an evidentiary hearing, however, the plaintiff need only make a prima facie showing of personal jurisdiction. *Id.* The complaint's uncontroverted allegations must be taken as true, and "[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)).

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Schwarzenegger*, 374 F.3d at 800. "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Id.* at 800-01. The relevant question, therefore, is whether the defendant has "at least 'minimum contacts' with [California] such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Id.* at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

There are two types of personal jurisdiction: "general or all-purpose" and "specific or case-linked." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

"General jurisdiction . . . permits a court to hear any and all claims against a defendant, whether or not the conduct at issue has any connection to the forum." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citation and quotation omitted). A court may assert general personal jurisdiction over defendants "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 471 U.S. at 919 (quoting *Int'l Shoe*, 326 U.S. at 317).

"Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (internal quotation marks omitted). The Ninth Circuit has established a three-part inquiry, referred to as the minimum contacts test, to determine whether a court has specific personal jurisdiction over a defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 603 (9th Cir. 2018) (quoting *Schwarzenegger*, 374 F.3d at 802). "The minimum contacts test 'ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts[.]'" *Id.* (internal quotation marks omitted) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* If the plaintiff does so, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.*

**III. DISCUSSION**

**A. General Jurisdiction**

HMSA argues that the Court does not have general personal jurisdiction over it.

"General jurisdiction over a corporation is appropriate only when the corporation's

3

contacts with the forum state are so constant and pervasive as to render it essentially at home in the state." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (internal quotation marks omitted). "With respect to a corporation, the place of incorporation and principal place of business are paradig[matic] . . . bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (internal quotation marks omitted). "[T]he Ninth Circuit has rejected the notion that general jurisdiction is appropriate whenever a corporation engages in a substantial, continuous, and systematic course of business in a state." *Cole-Parmer Instrument Co. LLC v. Pro. Lab'ys, Inc.*, No. 20-CV-08493-LHK, 2021 WL 3053201, at *4 (N.D. Cal. July 20, 2021) (quoting *Martinez*, 764 F.3d at 1070) (internal quotation marks omitted). "Rather, if a business is not incorporated in and does not have its principal place of business in a forum state, '[o]nly in an 'exceptional case' will general jurisdiction be available.'" *Id.* (quotation omitted).

HMSA cannot be fairly regarded as "at home" in California because it is neither incorporated in nor has its principal place of business in California. *See Daimler*, 571 U.S. at 137. Despite this, Stanford Hospital insists that the Court has general jurisdiction over HMSA where HMSA (1) made payments acknowledging "the debt owed as a result of its conduct of business in California with a California hospital," (2) marketed services to persons traveling and living in California, (3) directed its enrollees to at least 45 hospitals in California, (4) executed a "letter of agreement" regarding Stanford Hospital's care for one of the patients at issue in this case, and (5) authorized services for the patients at issue in this case. Dkt. No. 24 at 11. The Court disagrees. None of these allegations indicate that HMSA's contacts with California are "exceptional" or "so constant and pervasive as to render it essentially at home in the state." *Martinez*, 764 F.3d at 1066, 1070.

Accordingly, the Court concludes that it does not have general personal jurisdiction over HMSA.

### B. Specific Jurisdiction

HMSA also argues that the Court does not have specific jurisdiction over it.

The Ninth Circuit has held that the analysis under the first prong of the specific jurisdiction inquiry proceeds under either the purposeful availment test or the purposeful direction test. *Glob.*

*Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020). Both parties address the specific jurisdiction inquiry under the purposeful availment test, which courts apply to contract claims like this one. *Id.* Courts applying the purposeful availment test look to whether the defendant deliberately engaged in significant activities within the forum or created continuing obligations between itself and forum residents. *Id.* (citing *Burger King*, 471 U.S. at 475-76).

For the same reasons that Stanford Hospital asserts the Court has general jurisdiction over HMSA, it contends that the Court has specific jurisdiction. However, the Court concludes that Stanford Hospital does not make a prima facie showing that HMSA "reach[ed] out beyond [Hawaii]" to "create continuing relationships and obligations with citizens of [California]." *Burger King*, 471 U.S. at 473.

Stanford Hospital asserts that HMSA purposefully avails itself of the benefits of doing business in California by offering its members access to health care coverage in California. Dkt. No. 24 at 12-13. In particular, Stanford Hospital claims that HMSA's participation in Blue Cross Blue Shield's BlueCard program sufficiently establishes its jurisdictional contacts with California. *Id.* at 12.

However, courts regularly find a provider's participation in the BlueCard program insufficient to establish specific personal jurisdiction. *See Craig Hosp. v. Empire Healthchoice, Inc.*, No. 18-CV-00794-WYD-STV, 2019 WL 10258608, at *4-5 (D. Colo. Apr. 1, 2019) (collecting cases); *see also Healthcare Ally Mgmt. of California, LLC v. Blue Cross Blue Shield of Minnesota*, 787 F. App'x 417, 418 (9th Cir. 2019) (finding patient insurance contracts to be insufficient evidence of defendant Minnesota provider's purposeful availment in California where "six of the nine patients here were covered under plans administered – but not insured – by [provider], and the other three patients were insured through [provider] plans issued in Minnesota to Minnesota residents").[2]

Stanford Hospital tries to distinguish this case from the substantial authority to the contrary

---

[2] As an unpublished Ninth Circuit decision, *Healthcare Ally* is not precedent, but may be considered for its persuasive value. *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

by contending that none of the other cases involved allegations that the defendant provider "publicly advertises that its enrollees (when traveling or living on the Mainland) have access to routine medical services with more than 500,000 participating providers located outside of its geographical regions or involved a written contract with the provider." Dkt. No. 24 at 13. The Court is unpersuaded. As the court held in *St. Luke's Episcopal Hosp. v. Louisiana Health Serv. & Indem. Co.*, No. CIV.A. H-08-1870, 2009 WL 47125, at *8 (S.D. Tex. Jan. 6, 2009), "merely providing out-of-state health coverage to insureds does not subject an insurer to personal jurisdiction in every foreign state in which an insured happens to obtain medical services." *Id.* at *8 (citing *Perez v. Pan Am. Life Ins. Co.*, 1996 WL 511748, at *2 (5th Cir. 1996) (upholding the district court's conclusion that it lacked personal jurisdiction over a Guatemalan insurance company that provided worldwide coverage and authorized treatment for its insured in Texas but then refused to pay)). To "exercise . . . jurisdiction based solely on these thin 'contacts' would offend the traditional notions of fair play and substantial justice." *Perez*, 1996 WL 511748, at *2. The Court finds the reasoning in *Perez* and *St. Luke's*, and the reasoning of cases relying on them, persuasive and applies it here. The patients at the center of this dispute are insured through HMSA plans issued in Hawaii to residents of Hawaii and Washington, not California. Any contacts with California are "attenuated" at best and do not create a "substantial connection" with the state. *Burger King*, 471 U.S. at 475 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980)). Stanford Hospital's allegations that HMSA authorized Stanford Hospital to provide medical services for six of the patients at issue in this case and Stanford Hospital's vague references to medical services it provided to unidentified HMSA enrollees that HMSA paid for under the BlueCard program likewise do not constitute evidence of minimum contacts with California. Moreover, HMSA's alleged "advertising" of its out-of-state coverage is not evidence that it deliberately engaged in significant activities within California or created continuing obligations between itself and California residents. *Glob. Commodities*, 972 F.3d at 1107. At most, even as alleged, HMSA is advertising to its own plan members (who do not live in California).

Stanford Hospital also insists that personal jurisdiction exists by analogizing this case to

6

*Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.,* 907 F.2d 911 (9th Cir. 1990), in which the Ninth Circuit held that the District of Montana had personal jurisdiction over a Canadian automobile liability insurer that contracted to indemnify and defend any person driving with the consent of the insured. *Id.* at 914. But the circumstances here are different from those in *Farmers* because HMSA is not an automobile liability insurer, but a health insurance provider. That distinction is a meaningful one. As *Farmers* noted, "'[a] health insurance policy is typically sued upon where the insured resides, while an automobile liability policy is typically sued upon where an accident takes place.' As an automobile liability insurer, [defendant] could anticipate the risk that its clients would travel in their automobiles to different states and become involved in accidents and litigation there." *Id.* at 913-14. By contrast, "[w]hile [a health insurance provider like HMSA] could certainly anticipate that its insureds would travel out-of-state and need medical treatment, there is no reason for them to anticipate being sued in the forum where they received treatment." *Alaska Reg'l Hosp. v. Amil Int'l Ins. Co.*, No. A03-177 CV (JWS), 2003 WL 24085347, at *4 (D. Alaska Nov. 5, 2003).

   Another case Stanford Hospital relies on, *Santa Barbara Cottage Hosp. v. Glob. Excel Mgmt., Inc.*, No. 2:19-CV-08546-RGK-SS, 2020 WL 2510684, at *3 (C.D. Cal. Jan. 28, 2020), is likewise distinguishable. Stanford Hospital cites to *Santa Barbara Cottage* for the proposition that sufficient minimum contacts were established where defendant directed patients to hospitals in California and disputed bills after entering into payment discussions. *Id.* But in *Santa Barbara Cottage*, the court found that because defendant "administers claims for insured individuals who need medical assistance while traveling in the United States" and "travel is the crux of [defendant's] business," "[i]t is therefore entirely foreseeable" that defendant would be sued in California. *Id.* ("Defendant has voluntarily entered into relationships with hospitals in California for purposes of obtaining medical services for its enrollees. Therefore, when an issue arises out of one Defendants transactions undertaken pursuant to such relationships, Defendant should not be surprised when it is haled to court in this state."). Unlike *Santa Barbara Cottage*, this case does not involve a travel insurer, and Stanford Hospital does not plead any allegations plausibly showing why HMSA would anticipate being sued in California.

Stanford Hospital also points to HMSA's letter of agreement governing Stanford Hospital's services for one of the patients in this dispute as evidence of purposeful availment. But "a contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *Boschetto*, 539 F.3d at 1017 (citing *Burger King*, 471 U.S. at 478). Instead, courts must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine whether the defendant purposefully established minimum contacts within the forum. *Burger King*, 471 U.S. at 479; *see Glob. Commodities*, 972 F.3d at 1108 ("[C]ourts must evaluate the parties' entire course of dealing, not solely the particular contract or tortious conduct giving rise to the claim, when assessing whether a defendant has minimum contacts with a forum[.]"). Here, however, Stanford Hospital does not attach the letter to its complaint, opposition brief, or any declarations so as to permit the Court to evaluate its relevance, if any, to whether HMSA has sufficiently established minimum contacts with California. The Court views this omission as an odd one if the letter stands for the principle Stanford Hospital claims it does.

\* \* \*

Viewing HMSA's contacts with California in their totality, the Court concludes that Stanford Hospital has not made a prima facie showing purposeful availment by HMSA. Because this failure alone means that Stanford Hospital has not established specific personal jurisdiction, the Court need not address the remaining prongs. Given this conclusion, the Court also need not reach HMSA's motion to dismiss for failure to state a claim or motion to strike.

The Court grants HMSA's motion to dismiss for lack of specific personal jurisdiction.

**C.  Jurisdictional Discovery**

Stanford Hospital requests leave to conduct jurisdictional discovery. Dkt. No. 24 at 16.

The decision whether to grant jurisdictional discovery is within the discretion of the district court. *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977). "[C]ourts in this district have held that a plaintiff need not make out a prima facie case of personal jurisdiction before it can obtain jurisdictional discovery." *Calix Networks, Inc. v. Wi-Lan, Inc.*, No. C-09-06038-CRB DMR, 2010 WL 3515759, at \*4 (N.D. Cal. Sept. 8, 2010) (collecting

8

1   cases). "Rather, a plaintiff must present a 'colorable basis' for jurisdiction, or 'some evidence'
2   constituting a lesser showing than a prima facie case." *Id.* (citing *Google, Inc. v. Egger*, No. 08-
3   cv-03172-RMW, 2009 WL 1228485, at *1 (N.D. Cal. Apr. 30, 2009); *Focht v. Sol Melia S.A.*, No.
4   10-cv-0906-EMC, 2010 WL 3155826, at *2 (N.D. Cal. Aug. 9, 2010)). A "'colorable basis' could
5   be understood to require the plaintiff to come forward with 'some evidence' tending to establish
6   personal jurisdiction over the defendant." *Google*, 2009 WL 1228485, at *1 (quoting *Chapman v.
7   Krutonog*, 256 F.R.D. 645, 649 (D. Haw. 2009)). "Where a plaintiff's claim of personal
8   jurisdiction appears to be both attenuated and based on bare allegations in the face of specific
9   denials made by defendants, the Court need not permit even limited discovery." *Terracom v.
10  Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (citations omitted); *see also Getz v. Boeing
11  Co.*, 654 F.3d 852, 860 (9th Cir. 2011) (finding the denial of discovery appropriate when the
12  plaintiffs "fail[ed] to identify any specific facts, transactions, or conduct that would give rise to
13  personal jurisdiction" and offered only "purely speculative allegations of attenuated jurisdictional
14  contacts").

15          The Court concludes that Stanford Hospital has not established a colorable basis for
16  personal jurisdiction so as to be entitled to jurisdictional discovery. Stanford Hospital's
17  allegations of HMSA's participation in the BlueCard program, HMSA's authorization of Stanford
18  Hospital medical services for patients insured by HMSA, and HMSA's alleged "letter of
19  agreement," without asserting any conduct indicating direct targeting of California, do not
20  constitute "'some evidence' tending to establish personal jurisdiction over the defendant."
21  *Google*, 2009 WL 1228485. And Stanford Hospital's bare assertion that it "should be allowed the
22  opportunity to conduct discovery regarding HMSA's contacts with California," Opp. at 10, simply
23  begs the question without addressing the relevant standard. The issue is not that facts bearing on
24  jurisdiction are in dispute: it is that Stanford Hospital's allegations and evidence, even if accepted
25  as true, fail to meet the standard for establishing personal jurisdiction. Because Stanford
26  Hospital's claim of personal jurisdiction involves only "attenuated jurisdictional contacts" and
27  "speculative allegations," it has not shown an entitlement to jurisdictional discovery at this stage.
28  *See Getz*, 654 F.3d at 860.

9

**CONCLUSION**

As a matter of law, nothing in Stanford Hospital's complaint or opposition details sufficient contact with California so as to establish this Court's personal jurisdiction over HMSA. Accordingly, the Court grants HMSA's motion to dismiss. In light of the record discussed above, the Court has some doubt as to whether Stanford Hospital can amend its complaint to allege facts sufficient to make a prima facie showing supporting personal jurisdiction in this District. However, because the Court cannot conclude that amendment would be futile, dismissal is with leave to amend. Any amended complaint must be filed within 28 days of the date of this order.

By contrast, based on the record presented, it appears beyond dispute that this case could have been brought in the District of Hawaii, where HMSA resides. If there is any further litigation in this Court in this matter, HMSA should address in the alternative whether transfer of the case to the District of Hawaii would be appropriate under 28 U.S.C. § 1404.

**IT IS SO ORDERED.**

Dated:  9/2/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge